**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                            Case No. 8:13-bk-01017

JOHN SALOV                                              Chapter 7

       Debtor.
_____/

**RESPONSE IN OPPOSITION TO JOHN SALOV'S MOTION TO VOID RECEIVER SALE AND TRANSFER OF ASSETS IN BANKRUPTCY**

**Introduction**

    Oakville Tower Holdings, LLC ("Oakville") and Richland Tower-Charleston, LLC ("Richland Tower") (together, referred to as "Richland") are judgment creditors of the Debtor, John Salov ("Salov" or "Debtor"), and two LLC's that Salov previously owned, Digital TV of Orlando, LLC ("Orlando") and Charleston DTV, LLC ("Charleston") (together, sometimes referred to as the "LLCs"). The State Court-appointed receiver over the assets of the LLCs, Larry Hyman (the "Receiver"), sold the Orlando and Charleston assets at a public auction on January 31, 2013 (the "Receiver Sale") and Oakville and Richland Tower were the winning bidders for all of the Orlando and Charleston assets.

    Since the filing of this bankruptcy case, the Debtor has worked hard to obscure the line of what is property of the bankruptcy estate and what is not. The Debtor's motivation to blur the line of what constitutes property of the bankruptcy estate is being perpetrated as part of a continued scheme by this Debtor to oppose Richland's ability to enforce its legal contractual and possessory rights in connection with Orlando and Charleston, and the assets thereof.

    The relief being sought by the Debtor through his Motion to Void Receiver Sale and Transfer of Assets in Bankruptcy ("Motion to Void Sale") is not only procedurally defective, but

is simply not available in the instant bankruptcy case. Debtor requests that the "Chapter 7 Trustee argue that the assets which were the subject of the Receiver's sale are, in fact, assets of the bankruptcy estate and the transfer violates 11 U.S.C. § 549" (citing the "Wherefore" clause). Debtor's Motion to Void Sale should be denied for the following two reasons:

(1) Debtor, as he acknowledged in his "Wherefore" clause, does not have standing to pursue such a motion because the Chapter 7 Trustee is the only person with standing to collect and administer property of the estate.

(2) The Orlando and Charleston assets that were sold at the Receiver Sale are not and cannot be property of the Debtor's bankruptcy estate. Salov's membership interests in Orlando and Charleston were transferred to the Receiver, pre-petition, and therefore, are not property of the Debtor's bankruptcy estate. Debtor's Motion to Void Sale is nothing more than an end run around attempt to utilize the Bankruptcy Court as an appellate court to reconsider State Court final orders. Additionally, even if the transfer of Salov's membership interest in the LLCs can be unwound, the intangible rights that a Chapter 7 Trustee may possess does not provide the Chapter 7 Trustee with the ability to ignore Orlando's and Charleston's corporate forms for purposes of making those LLCs' assets (sold at the Receiver Sale to Richland) property of the Debtor's bankruptcy estate.

**Background**

Without citing the entire history of the State Court Litigation (defined below) involving Salov and Richland leading up to Salov's hasty filing of this instant bankruptcy case, the background provided herein is necessary to fully explain the nature of the State Court Litigation and Salov's consistent efforts to try to deteriorate and dissipate the assets owned by Orlando and Charleston, in particular the FCC licenses.

On May 27, 2011, in the Hillsborough County Circuit Court, Oakville initiated a lawsuit against Orlando and Salov, Case No. 11-CA-006545, and simultaneously, Richland Tower filed a lawsuit against Charleston and Salov, Case No. 11-CA-006543 (together, "State Court Litigation").[1]

Although Orlando, Charleston, and Salov never filed responsive pleadings in the State Court Litigation, they retained counsel, and participated in and agreed to the appointment of the Receiver to protect and preserve the assets of the LLCs. On August 16, 2011, the Court entered its Agreed Order on Plaintiff's Verified Motion to Appoint Receiver ("Agreed Receivership Order"), and on September 8, 2011, the Court entered its Amended Order on Plaintiff's Motion to Appoint Receiver ("Amended Agreed Receivership Order") to compel Salov to comply with necessary requirements to transition the assets of Orlando and Charleston to the Receiver. In the Orders, Salov agreed to fully cooperate with the Receiver to allow the Receiver to fulfill all future duties related to disposition of LLC assets to fulfill Salov's and the LLCs' obligations to Richland. True and correct copies of the Agreed Receivership Order and the Amended Agreed Receivership Order are attached as **Composite Exhibit "A"** and are incorporated by reference.

On or about November 21, 2011, Oakville obtained a judgment against Orlando in the amount of $872,122.75 for breach of a lease that Orlando had with Oakville in which Orlando possessed the rights to broadcast a television station from Oakville's communications tower in Orlando, Florida. Contemporaneously, Richland Tower obtained a judgment against Charleston in the amount of $742,091.60 for breach of a lease that Charleston had with Richland Tower in which Charleston possessed the rights to broadcast a television station from Richland Tower's communications tower in Charleston, South Carolina. Oakville and Richland Tower simultaneously obtained judgments against Salov in the full amount of the aforementioned

---

[1] The two cases were consolidated under Case No. 11-CA-006545.

judgments because he personally guaranteed the obligations of Orlando and Charleston under the respective lease agreements.[2]

On July 27, 2012, due to Salov's failure to cooperate with the Receiver, to ensure compliance of the Stations with FCC rules and policies, and to preserve those FCC licenses, Oakville and Richland Tower filed their respective motions titled, Motion for Order Transferring Ownership of Assets to Receiver (the "Transfer Motions"). At the time the Transfer Motions were filed, the station operated by Orlando, WHDO-CA (the "Orlando Station"), and the station operated by Charleston, WDHC-LP (the "Charleston Station") (together, the "Stations"), had not broadcasted for nearly a year, which severely jeopardized the FCC licenses associated with the Stations.

On August 6, 2012, the State Court entered its Orders Granting the Transfer Motions (the "Ownership Transfer Orders"), wherein the State Court transferred all control and 100% interest in Orlando and Charleston to the Receiver. The Ownership Transfer Orders required Salov to cooperate with the transfer of control and ownership of Orlando and Charleston to the Receiver; to cooperate with the transfer of the FCC licenses to the Receiver; and to take all actions and file all documents necessary to effectuate these transfers. True and correct copies of the Ownership Transfer Orders are attached as **Composite Exhibit "B"** and are incorporated by reference. On August 22, 2012, given the exigencies involved with ensuring that the FCC licenses were properly renewed and Salov's continued failure to comply with State Court orders, the State Court entered the Amended Ownership Transfer Orders, in which the State Court modified the Ownership Transfer Orders[3] to require that Salov execute, within twenty-four (24) hours, all

---

[2] The four judgments referenced in this paragraph are attached to the Motion to Void Sale as **Exhibit 1.** To avoid duplication of papers, the judgments are not attached to this Opposition Response but are incorporated by reference.

[3] The Ownership Transfer Orders were also substantively modified to place a limitation on the Receiver's ability to transfer, sell, or otherwise dispose of the FCC licenses without further order of the State Court.

4

documents that needed to be executed for the voluntary transfer of the FCC licenses associated with the Orlando and Charleston Stations to the Receiver's control.  True and correct copies of the Amended Ownership Transfer Orders are attached as **Composite Exhibit "C"** and are incorporated by reference.  Salov was represented by counsel at the hearing where the motions to enter the Amended Transfer Orders were granted.

At the time the Ownership Transfer Orders were entered, the Orlando FCC license, which was its primary asset, was in imminent danger of becoming worthless.  Under FCC rules, the Orlando Station could not be off the air for more than one year or its license would automatically expire.  This was explained in more detail in an Affidavit filed by the Receiver's FCC counsel, which is attached hereto as **Exhibit "D".**  As a result, the Receiver only had until September 22, 2012, to get the Orlando Station back on the air and broadcasting in compliance with FCC rules and regulations.  Unfortunately, one of Salov's many misrepresentations to the Court was that he had equipment capable of putting the Orlando Station back on the air.  When this proved false, the Receiver, through Richland, worked tirelessly to meet the September 22, 2012 deadline.  Ultimately, the station was back on the air timely.  However the resumption of broadcasting and continued operation of the station was very expensive, and through December 1, 2012, the Receiver's costs for station operations had exceeded $160,000, which were paid by Richland.  Since that time, Richland has expended in excess of $80,000 to keep the station operating, even before it obtained legal ownership of Orlando's FCC license and other assets through the Receiver Sale on January 31, 2013.  Had it not taken this risk and invested this money, the only Orlando asset that could have been used to satisfy its judgment – the FCC license would have been reduced.

On September 7, 2012, the court entered Orders directing the Receiver to sell the Orlando and Charleston assets, including the FCC licenses, at a public sale in a commercially reasonable manner (<u>Orders Directing Receiver Sale</u>, attached as **Composite Exhibit "E"**). In these Orders, Salov was required to cooperate with the sale of the FCC licenses by the Receiver and to take all actions and file all documents necessary to effectuate the license transfers and sale. Needless to say, Salov is currently in violation of the three stale Court Orders referenced herein, which specifically required him to cooperate with the Receiver and the license transfer and ultimate sale.

After taking the necessary actions outlined above to get the FCC licenses on track and to avoid their expiration, the Receiver scheduled a public sale of the assets of Orlando and Charleston to occur on January 31, 2013 (the "<u>Receiver Sale</u>"), published the Notice of Public Sale, and sent the Notice of Public Sale to Salov, all known creditors of Orlando and Charleston, and all parties who had expressed interest in possibly purchasing the Orlando Station or Charleston Station. A true and correct copy of the Notice of Public Sale with Certificate of Service is attached at **Exhibit "F"** and is incorporated by reference.

In advance of the Receiver Sale, Oakville and Richland Tower obtained supplemental judgments against Orlando and Charleston, respectively, as well as against Salov, for all fees and costs incurred in attempting to satisfy their judgments through November 30, 2012. Oakville obtained a supplemental judgment awarding fees and costs of $245,619.40, and Richland Tower obtained a supplemental judgment awarding fees and costs of $31,154.13. True and correct copies of the supplemental judgments entered in favor of Oakville and Richland Tower are attached as **Composite Exhibit "G"** and are incorporated by reference.

On January 28, 2012, the week of the scheduled Receiver Sale, Orlando, Charleston, and Salov, through their then State Court and now Salov's bankruptcy counsel[4], filed their Notice of Limited Appearance, Motion for Rent Credit, Motion for Attorneys' Fees, and Motion for Postponement of Receiver's Sale and Clarification of Terms of Sale and Determine Priority of Liens (the "Shotgun Motion"), in which they raised every possible argument to try to achieve their goal of continuing the Receiver Sale. Notwithstanding the shotgun approach, nowhere in the motion did it mention that Salov had filed or was intending on filing for Chapter 7 bankruptcy protection the same day. The State Court scheduled an emergency hearing on the Shotgun Motion for Wednesday, January 30, 2012, at 2:00 p.m. Shortly before the hearing on the Shotgun Motion, Richland's counsel learned that Salov had filed for personal bankruptcy protection under Chapter 7 of the Bankruptcy Code. At the Shotgun Motion hearing, Salov's counsel informed the State Court that Salov had filed for personal bankruptcy and argued that the State Court should cancel the Receiver Sale on this fact alone. Salov's counsel never addressed any other reasons for why the State Court should cancel the Receiver Sale. The State Court stayed the Receiver Sale pending a determination by the Bankruptcy Court as to whether the assets being sold at the Receiver Sale are property of the Debtor's bankruptcy estate. A true and correct copy of the State Court's Order staying the Receiver Sale is attached as **Exhibit "H"** and is incorporated by reference.

On the afternoon of January 30, 2013, Richland filed its Emergency Motion for Order Confirming that Automatic Stay is not in Effect (Doc. No. 6), wherein Richland explained why the assets of Orlando and Charleston are not assets of the Debtor's bankruptcy estate and further

---

[4] This is Orlando's, Charleston's, and Salov's third set of attorneys to represent it in the State Court Action. The first two firms filed motions to withdraw, which were granted. It is not known how two LLCs and an individual who claim they have had no funds since the outset of this litigation have the means to repeatedly hire new counsel, although Salov did testify at his Creditor's meeting that he has never paid any money to his current State Court/Bankruptcy counsel.

7

explained the potential impact that canceling the Receiver Sale would have on Richland and other parties. Contrary to the Debtor's factual misstatements in his Motion to Void Sale, Richland also filed its Certification of Necessity of Request for Emergency Hearing (Doc No. 7) along with the Emergency Motion and emailed the Emergency Motion and Certification of Necessity to the correct email address owned by Mr. Russell Koss (true and correct copy of the email transmitting both documents is attached as **Exhibit "I"**) in addition to faxing them.

Although the Motion to Void Sale seeks to paint a picture for the Bankruptcy Court that Richland's Emergency Motion was incomplete and misleading, Debtor's comments are immaterial as to whether the LLCs' assets which were sold at the Receiver Sale are property of the Debtor's bankruptcy estate.

## **Legal Argument**

Debtor's Motion to Void Sale is just another attempt by Salov to thwart Richland's legal and valid rights to obtain ownership over the FCC licenses associated with the Stations. Further, Debtor's actions may entirely eliminate the value of the FCC licenses, while they continue to drive up costs for all parties involved. Unfortunately, Debtor has continued his barrage of attacks on Richland even post-petition by filing an FCC petition challenging and objecting to the renewal of the FCC licenses for the Stations and transfer from the Receiver to Richland despite his lack of standing to do so.

Debtor's "Wherefore" clause in his Motion to Void Sale establishes the purpose for his filing of the Motion to Void Sale. Debtor acknowledges that he does not possess the requisite standing to void the Receiver Sale or initiate an 11 U.S.C. § 549 action. It is axiomatic that the Chapter 7 Trustee is the only person with standing to collect and administer property of the estate. *In re Young*, 439 B.R. 211, 217 (Bankr. M.D. Fla. 2010). Further, the Chapter 7 Trustee

n

is the only party with standing to pursue estate causes of action, such as one under 11 U.S.C. § 549. *See In re Cook*, 2011 WL 3501844, at *5 (Bankr. D. N.M. Aug. 9, 2011). A chapter 7 debtor has none of these rights. *See Young*, at 217-218.

Irrespective of Debtor's standing, the Receiver Sale cannot be voided because the Orlando and Charleston assets sold at the Receiver Sale are not property of Debtor's bankruptcy estate. The assets sold at the Receiver Sale were owned by non-debtor Florida limited liability companies in which Salov only possessed a beneficial interest.

The Amended Ownership Transfer Orders demonstrate that Salov's membership interests in the LLCs were transferred to and vested in the Receiver many months before the petition date. Accordingly, at the time Salov filed his voluntary bankruptcy petition, his membership interests in Orlando and Charleston were vested in and owned by the Receiver and thus, are not property of his bankruptcy estate. In accordance with the Amended Ownership Transfer Orders, the Debtor, while represented by counsel, assigned and transferred his membership interest and all assets of Orlando and Charleston to the Receiver to protect and preserve the FCC licenses. Salov's attorney at the time (his second set) helped facilitate the assignment and transfer.

Salov had the opportunity to appeal and/or request reconsideration of the Ownership Transfer Orders and the Amended Ownership Transfer Orders entered in the State Court Litigation and decided not to do so. The *Rooker-Feldman* Doctrine prevents him and any other party from utilizing the bankruptcy system as a *de facto* appellate system to challenge final orders of the State Court. By arguing that he even owns the membership interests in Orlando and Charleston, Salov is effectively requesting the Bankruptcy Court to nullify rulings in the Ownership Transfer Orders and Amended Ownership Transfer Orders which, again, were never even challenged in the State Court Proceeding.

Additionally, assuming for sake of argument that Debtor's 100% membership interests in Orlando and Charleston are actually property of his bankruptcy estate, it is well-established that although a debtor's interest in an LLC may be property of a bankruptcy estate, the property held by the LLC is not. *See In re Hopkins*, 2012 WL 423916 (Bankr. N.D. Ohio, Feb. 2, 2012); *In re Anderson*, 2010 WL 3941638, at *2 (Bankr. N.D. Ga. July 23, 2010) (citing the legal proposition that a separate legal entity that is established to hold property is considered a separate legal entity for that purpose and that the LLC must file its own petition to receive bankruptcy protection); *In re Coenen*, 2012 WL 3960313, at *2 (Bankr. W.D. Wis., Sept. 10, 2012) (holding that while a debtor's interest in a wholly-owned LLC became property of the estate upon his bankruptcy filing, the real property owned by the LLC does not).

Under Florida law, a member in a Florida LLC, even a sole member, has no interest in specific LLC property, Fla. Stat. § 608.425 (2011), which correlates to the Debtor's bankruptcy estate having no direct claim against or right to property previously held or owned by Orlando or Charleston. The Debtor or any other party may not seek to recover any of Orlando's or Charleston's assets for the benefit of the Debtor's bankruptcy estate because the estate never possessed any interest in those assets. Therefore, it is inappropriate for the Debtor and any other party to try to void or interfere with the Receiver Sale.

WHEREFORE, Oakville Tower Holdings, LLC and Richland Tower-Charleston, LLC respectfully request that this Court enter an Order: (i) denying the John Salov's Motion to Void Receiver Sale and Transfer of Assets in Bankruptcy; (ii) awarding attorneys' fees and costs to Oakville Tower Holdings, LLC and Richland Tower-Charleston, LLC in connection with the Debtors Motion to Void Sale; and (iii) granting such other and further relief as this Court deems just and proper.

DATED this 25th day of April, 2013.

/s/ R. Travis Santos
R. Travis Santos
Florida Bar No. 0077075
Keith T. Appleby
Florida Bar No. 11028
HILL, WARD & HENDERSON, P.A.
Post Office Box 2231
Tampa, Florida  33601
Telephone: (813) 221-3900
Facsimile: (813) 221-2900
E-Mail: tsantos@hwhlaw.com
E-Mail: kappleby@hwhlaw.com
*Attorneys for Oakville Tower Holdings, LLC
and Richland-Tower Charleston, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the John Salov Motion to Void Receiver Sale and Transfer of Assets in Bankruptcy is being served via U.S. Mail or CM/ECF on the following parties on this 25th day of April, 2013:

| | |
|---|---|
| John Salov<br>1502 W. Busch Blvd., Suite H-2<br>Tampa, Florida 33612 | Russell Koss<br>1502 W. Busch Blvd., Suite H4<br>Tampa, Florida 33612<br>Facsimile:  (813) 933-8014 |
| Shari Streit Jansen<br>P.O. Box 50667<br>Sarasota, Florida 34232<br>Facsimile:   (941) 378-3320 | Lynn Welter Sherman, Esq.<br>Adams and Reese LLP<br>101 E Kennedy Blvd, Suite 4000<br>Tampa, Florida 33602 |
| United States Trustee<br>Timberland Annex, Suite 1200<br>501 E. Polk Street<br>Tampa, Florida 36302 | |

/s/ R. Travis Santos
R. Travis Santos